UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD MCCASLIN,

        Plaintiff,                              Case No. 1:13-cv-720

v.                                                   HON. JANET T. NEFF

COMCAST CABLE
COMMUNICATIONS
MANAGEMENT, LLC,

        Defendant.
_____/

DOMINICK J. BUSTI,

        Plaintiff,                              Case No. 1:13-cv-740

v.

COMCAST CABLE
COMMUNICATIONS
MANAGEMENT, LLC,

        Defendant.
_____/

RICHARD DOEST,

        Plaintiff,                                Case No. 1:13-cv-968

v.

COMCAST CABLE
COMMUNICATIONS
MANAGEMENT, LLC,

        Defendant.
_____/

**OPINION**

Pending before the Court is Defendant Comcast's Motion for Summary Judgment (Dkt 44)[1] in these separate but related age discrimination cases stemming from the termination of Plaintiffs' employment on the grounds that they used certain derogatory racial references in the workplace. Plaintiffs have filed a Response opposing the motion (Dkt 49); and Defendant has filed a Reply (Dkt 47). For the reasons that follow, the Court grants Defendant's motion.

## I. Facts

The parties have stipulated to the facts as follows for purposes of the motion for summary judgment (Dkt 45):

1. Plaintiff Dominick Busti worked for Comcast (and its predecessors) from August 17, 1998 to October 23, 2012. He was last employed as a Network Technician.

2. Plaintiff Richard Doest worked for Comcast (and its predecessors) from April 16, 2001 to October 23, 2012. He was last employed as a Technician Operator.

3. Plaintiff Ronald McCaslin worked for Comcast (and its predecessors) from March 16, 1987 to October 23, 2012. He was last employed as a Network Technician.

4. Comcast maintained policies prohibiting discrimination and harassment in the workplace, which included racial slurs. Plaintiffs were trained in accordance with Comcast's anti-harassment/anti-discrimination policies and received refresher training periodically.

---

[1] For ease of reference, since the parties have filed the same combined briefs in each of the three cases, this Opinion and Order will refer to the docket numbers in the *McCaslin* case, 1:13-cv-720.

2

5. Plaintiffs were last employed at Comcast's facility in Richland, Michigan, which services Kalamazoo and the surrounding counties.

6. In the fall of 2012, Comcast's Human Resource Department investigated a complaint that an employee made under its "Open Door" policy alleging a racial slur was used in the workplace. The three Plaintiffs, Paul Crisher, and Aaron Rose were suspended pending the outcome of the investigation. At the conclusion of the investigation, Comcast terminated Plaintiffs' employment and issued final written warnings to Crisher and Rose. At this time, Busti was 59 years old (date of birth: 12/11/1952), McCaslin was 52 (10/16/1960), and Doest was 45 (1/20/1967), Crisher was 39 (3/6/1973), and Rose was 32 (1/26/1980).

7. Plaintiffs Busti and McCaslin's positions were replaced by Jermane Pinson and Zach Albertson. Pinson was 36 (date of birth: 9/3/1976) and Albertson was 29 (6/11/1983). Plaintiff Doest's position was not replaced.

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer,* 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess,* 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

### III.  Discussion

Plaintiffs allege age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2101 *et seq*.  The analytic framework and evidentiary burdens for Plaintiffs' claims are the same under either statute for purposes of this motion. *See Geiger v. Tower Auto.*, 579 F.3d 614, 621-22, 626 (6th Cir. 2009); *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 501 (6th Cir. 2007); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).

### A.  *McDonnell Douglas* Framework

Plaintiffs allege disparate treatment theories of discrimination based on circumstantial evidence, i.e., that they were disparately disciplined with termination for alleged racial slurs whereas two younger employees were not terminated and received only temporary suspensions for alleged race-based references.  Further, Plaintiffs McCaslin and Busti were each replaced by younger employees.  Plaintiffs' claims are based solely on circumstantial evidence of age discrimination, subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first establish the four elements of a *prima facie* case to raise an inference of discrimination, by showing that:  (1) he was a member of a

protected class, i.e., over 40; (2) he was discharged; (3) he was qualified for the position held; and (4) he was replaced by someone outside of the protected class, i.e., that he was replaced by, or treated less favorably than, someone substantially younger. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264-65 (6th Cir. 2010); *Geiger*, 579 F.3d at 622.

Once a plaintiff satisfies his *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Schoonmaker,* 595 F.3d at 264 (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)). If the employer meets this burden, then the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination. *Id.* The burden of persuasion, however, remains on the plaintiffs at all times to demonstrate "'that age was the 'but-for' cause of their employer's adverse action.'" *Geiger*, 579 F.3d at 620 (quoting *Gross v. FBL Fin. Services, Inc.*, ___ U.S. ___; 129 S. Ct. 2343, 2351 n.4 (2009)).

Finally, "[a] plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). "'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Geiger*, 579 F.3d at 620 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).

B. Analysis

"In a disparate treatment case, it is the plaintiff's burden to prove that an employer

intentionally 'treats some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Stotts v. Memphis Fire Dept.*, 858 F.2d 289, 294 (6th Cir. 1988) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).  Although the parties advance their arguments under the *McDonnell Douglas* framework, their application of the framework to the circumstances presented is less straightforward.  The essential dispute is whether the discipline administered by Defendant was based on the impermissible consideration of age or on permissible and appropriate distinctions in the conduct disciplined.[2]  Regardless whether this dispute is resolved at the *prima facie* case stage or at pretext stage, the result is the same.  The Court determines that viewing the facts in a light most favorable to Plaintiffs, their claims fail under the *McDonnell Douglas* framework.

With respect to establishing a *prima facie* case, Plaintiffs have failed to establish the fourth factor of the *McDonnell Douglas* test—that they were treated less favorably than similarly situated non-protected employees under *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992). *See Cameron v. Ohio*, 344 F. App'x 115, 118-19 (6th Cir. 2009).  As Defendant contends (Dkt 46 at 10-12), to be "similarly situated," Plaintiffs and the two coworkers at issue must have engaged in misconduct of comparable levels of severity, or stated differently, of "comparable seriousness." *See Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (a plaintiff must show that he and his proposed comparators were similar in all relevant respects and that he and his proposed comparators engaged in acts of comparable seriousness).  Here, Plaintiffs were not

---

[2]Plaintiffs McCaslin and Busti also allege that following their terminations, they were replaced by younger employees; however, the parties do not contend that these additional circumstances alter the framework for the legal analysis.

"similarly situated" to the two employees who were disciplined with suspensions but not termination, because the alleged misconduct was not of comparable seriousness.

As summarized by Plaintiffs, their employment terminations followed from an investigation by Defendant's Human Resources Department, after receiving a report in September 2012 that Plaintiff McCaslin said to (or in the presence of) coworkers Billy Mansfield and Jermane Pinson that he was tired of fixing "DAN's shit," explaining that DAN meant "dumb ass nigger" and that that was Plaintiff Busti's word for Derick Waters, an African-American technician/coworker (Pls.' Resp., Dkt 49 at 8). Pinson reported this to Waters, and Waters in turn reported it to his supervisor, Bernard Page, who reported it to Human Resources, which initiated an investigation (*id.*).

According to the record,[3] the investigation was led by Mandy McIntyre, Defendant's Human Resources Manager for Richland, who interviewed fifteen witnesses, some multiple times, with the participation of Sandra Stankov, Human Resource Senior Manager, or Heather Elder, Human Resource Manager (Def's. SMF ¶¶ 12, 14, 26; *see* Jt. Ex. 10, McIntyre Dep. at 41, 134-219; Def's. Ex. 23, McIntyre Investigation Notes; Def's. Ex. 24, Elder Investigation Notes). At the conclusion of the investigation, McIntyre and Stankov presented their investigation results to Defendant's senior management and senior human resource professionals, who considered the evidence and made a collective decision to terminate Plaintiffs' employment and to issue Final Written Warnings to Rose and Crisher based on evidence that Plaintiffs said "Dumb Ass Nigger" in reference to coworkers at work, and Crisher and Rose said "you people" in reference to African Americans in the context of political statements (Def's. SMF ¶ 27, *see* Jt. Ex. 10, McIntyre Dep. at 37-40,

---

[3]Defendant provides a statement of material facts (SMF) with citations to the record evidence (Dkt 46).

113-117; Jt. Ex. 11, Anderson Dep. at 21-36; Jt. Ex. 14, Crisher Final Warning; Jt. Ex. 15, Rose Final Warning; Def's. Ex. 20, Busti Termination Request; Def's. Ex. 21, 10/26/12 Ltr. to Doest; Def's. Ex. 22, McCaslin Termination Request; Def's. Ex. 30, Termination Notes). The disparity in discipline was based on the evidence and conclusion that Rose's and Crisher's conduct was not as serious as Plaintiffs' racial epithets (McIntyre Dep. at 39-40; Anderson Dep. at 34-36). Both McIntyre and Anderson testified that there was a distinct difference between the allegations regarding Plaintiffs and those involving Rose and Crisher: "Well, I think you can draw a pretty clear distinguishing line between calling somebody a dumb ass nigger and , you know, saying, 'You people,' in a banter about politics or what have you" (Anderson Dep. at 34).

Although Plaintiffs dispute certain facts and whether they actually used the term DAN/"dumb ass nigger" in the workplace to reference Waters or anyone else in a derogatory manner,[4] Plaintiffs acknowledge that McIntyre interviewed each of them about use of the term DAN, placed each of them on administrative suspension, and ultimately separately notified them that their employment was terminated for violating the company's code of conduct/using the racial slur DAN (Pls.' Resp., Dkt 49 at 8-10). The two younger employees, Crisher and Rose, were disciplined for reportedly using the references "you people" or "your people" (Jt. Ex. 14, Crisher Final Warning; Jt. Ex. 15, Rose Final Warning). Plaintiffs advance no legitimate argument that the latter is of "comparable seriousness" to references to DAN/"dumb ass nigger" in the workplace.[5]

---

[4] Doest admitted using the term.

[5] The Court wholly rejects Plaintiffs' assertions that the references "you people" or "your people" is consistent with calling African Americans "lazy fucking niggers" (*see* Pls.' Resp., Dkt 49 at 26).

8

As Defendants observe, employers have a well-recognized, affirmative legal duty to exercise reasonable care to promptly and appropriately remediate discriminatory or harassing conduct in the workplace. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999). Case law as well as common sense dictates that the level of corrective action taken by an employer should be commensurate with the severity of the misconduct. *See West v. Tyson Foods, Inc.*, 374 F. App'x 624, 633 (6th Cir. 2010); *Blankenship v. Parke Care Ctrs.*, 123 F.3d 868, 872 (6th Cir. 1997) ("the appropriateness of a[n employer's] response depends on the frequency and severity of the alleged harassment").

The reference "nigger" is universally condemned as a highly offensive, wholly unacceptable racial slur, not only in the workplace but in society in general. The same cannot be said of the more innocuous references "you people" or "your people," which may be used in a range of contexts. This point is well-made by Defendants' citation to numerous cases that bear out this distinction:

> [C]ourts have routinely held that saying the word "nigger" at work is particularly severe and harmful and it requires the most serious response from the employer, whereas phrases like "you people" are less severe. *Compare Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' … than the use of an unambiguously racial epithet such as 'nigger' [by a supervisor in the presence of his subordinates]"); *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001) (the word "nigger" is "perhaps the most offensive and inflammatory racial slur in English, ... a word expressive of racial hatred and bigotry") (internal quotation omitted); *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 356 (8th Cir. 1997) (the "use of the word '[nigger]' even in jest, [can] be evidence of racial antipathy") (internal quotation omitted); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, [1116] (9th Cir. 2004) ("It is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination"); and *Bailey v. Binyon*, 583 F. Supp. 923, 927 (N.D. Ill. 1984) ("The use of the word 'nigger' automatically separates the person addressed from every non-black person; this is discrimination *per se*"), with *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1056

9

>   (8th Cir. 2000), *abrogated on other grounds*, (finding the use of "you people" as evidence of discrimination to be "innocuous" [where a race-specific interpretation was unsupported]); *Bowden v. Clough*, 658 F. Supp. 2d 61, 81 (D.D.C. 2009) ("While being subjected to the phrase 'you people' ... may be rude and insensitive, such comments and incidents do not describe a hostile environment under Title VII") (internal quotations omitted).

(Def's. Brf., Dkt 47 at 11-12 (minor changes and corrections)).

From a disciplinary standpoint, Plaintiffs' conduct at issue is not "comparably serious" to that of Crisher and Rose. It follows that Plaintiffs' age discrimination claims do not survive summary judgment because Plaintiffs have failed to establish the "similarly situated" element of a *prima facie* case of discrimination based on age.

Even if the Court were to find that Plaintiffs' claims survived the *prima facie* case stage of *McDonnell Douglas*, Plaintiffs cannot show that Defendants' nondiscriminatory reasons for terminating Plaintiffs' employment are pretextual. "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler*, 317 F.3d at 576 (quoting *Dews*, 231 F.3d at 1021); *see also Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 915 (6th Cir. 2013). In other words, a plaintiff must "produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendants ... did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 579 (6th Cir. 2012) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001) (internal quotation marks and brackets omitted)).

Plaintiffs cannot make the requisite showing of pretext.[6]  Plaintiffs attempt to show pretext by arguing that Defendant's termination of their employment was not actually motivated by Plaintiffs' misconduct related to use of the term DAN/"dumb ass nigger."  Plaintiffs' arguments in this regard are unavailing.

First, for the reasons discussed above, Plaintiffs' argument that the conduct of Rose and Crisher was of "comparable seriousness" is without merit, and provides no basis for finding Defendants' reasons for the terminations pretextual.  Second, the record establishes that Defendant conducted an extensive investigation of the reported racial slurs and derogatory comments in the workplace, which included numerous interviews and follow-up by Human Resources Director Mandy McIntyre and others.  Contrary to Plaintiffs' assertions, Rose and Crisher did not escape discipline.  Defendant issued Final Written Warnings to Rose and Crisher, "to prevent any further failure to comply with [Defendant's] policies against the Conduct Policy and workplace harassment" (JSMF ¶ 6; Jt. Exs. 14-15).

Plaintiffs' denials that they used the acronym DAN/"dumb ass nigger" or committed other reported misconduct do not further their arguments concerning pretext.  "Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a [] discrimination claim to withstand a motion for summary judgment."  *Mitchell*, 964 F.2d at 585.  As Defendant points out, its disciplinary decision is entitled to deference under the "honest belief" rule.  An employer's decision is entitled to

---

[6]Plaintiffs do not contend that the conduct of using the reference DAN/"dumb ass nigger" in the workplace would not be sufficient to warrant the terminations or that the alleged misconduct has no basis in fact.  For example, Plaintiff McCaslin's Complaint simply alleges that Defendant "retained other younger persons who had committed substantially greater misconduct than what Mr. McCaslin was alleged to have committed" (Compl., Dkt 1 ¶ 19).

deference so long as it was "a reasonably informed and considered decision before taking an adverse employment action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012); *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" (citation omitted)). The record fully supports Defendant's honest belief in the nondiscriminatory reasons for the termination of Plaintiffs' employment.

The Court finds no record support for Plaintiffs' arguments that Defendant committed "willful blindness" with respect to other offensive conduct by Crisher, such as McCaslin's and Doest's deposition testimony that they heard Crisher say "I hate Mondays," and indicate that by Mondays he meant black people (Pls.' Resp., Dkt 49 at 26-27). Defendant likewise investigated these reports and reissued its earlier corrective action of a Final Written Warning to address and include allegations related to such additional comments (Def's. Exs. 28-29).

Plaintiffs also argue that Defendant never terminated another employee, 45-year-old Melissa Kedo, an installer with an alleged long history of disciplinary actions against her for conduct such as using profane and abusive language and falsifying company documents (Pls.' Resp., Dkt 49 at 28). Plaintiffs assert that it is "shocking" that Defendant would terminate them for a first offense, "even if one assumed that they committed them" (*id.*). Despite Plaintiffs' hyperbole, they fail to show that Kedo is "similarly situated" to Plaintiffs to support a finding of pretext. Moreover, at 45, Kedo is the same age as Plaintiff Doest at the time of his termination, thus diminishing the claimed support for their age discrimination claims.

The Court finds no merit in Plaintiffs' contention that Defendant's distinctions among employee conduct "are not consistent except as regards the ages of the person being harmed or benefitted …" (*see id.*).

## IV.  Conclusion

The Court finds no triable issues concerning Plaintiffs' claims of age discrimination. Plaintiffs have failed to establish a *prima facie* case of age discrimination, or alternatively, have failed to show that Defendant's reasons for terminating Plaintiffs' employment was pretext. Defendant's motion for summary judgment is therefore granted.

An Order will be entered consistent with this Opinion.


Dated: May 18, 2015                              /s/ Janet T. Neff
                                                 JANET T. NEFF
                                                 United States District Judge